United States District Court
Southern District of Texas
**ENTERED**
February 19, 2016
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ARIANA M., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-14-3206 |
| | § | |
| HUMANA HEALTH PLAN OF TEXAS, | § | |
| INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

This is an ERISA case challenging the denial of benefits under a group health plan insured and administered by Humana Health Plan of Texas, Inc. ("Humana"). Ariana M., a dependent eligible for benefits under the plan, sued Humana under 29 U.S.C. § 1132(a)(1)(B) after it terminated payments for her partial hospitalization treatment. Humana moved for summary judgment on the grounds that: Ariana M.'s adverse determination for preauthorization of treatment and claims for benefits was reasonable and based on substantial evidence; even under a *de novo* review, Ariana M.'s condition did not satisfy the medical-necessity criteria required to continue partial hospitalization treatment; and Ariana M.'s claims were fully and fairly reviewed by board-certified psychiatrists and Humana complied with ERISA procedural requirements. (Docket Entry No. 39). Ariana M. responded and sought summary judgment in her favor on the grounds that: the denial was improper even under an abuse-of-discretion standard of review; Ariana M.'s treatment met the medical-necessity criteria; and the record failed to support Humana's decision to deny benefits. (Docket Entry No. 44).

Based on the pleadings, the parties' arguments and submissions, the administrative record, and the applicable law, this court grants Humana's motion for summary judgment and denies Ariana

M.'s motion.  Final judgment is entered by separate order.  The reasons are explained below.

## I.    Background

Ariana M. is a 19-year-old female who suffers from an eating disorder and depression.  From April 15, 2013 to June 4, 2013, Humana authorized and paid for partial hospitalization treatment at Avalon Hills Treatment Center in Logan, Utah.  Humana denied benefits on June 5, 2013, after finding that the treatment was no longer medically necessary.

The plan defines "medically necessary" to mean:

> health care services that a *health care practitioner* exercising prudent clinical judgment would provide to his or her patient for the purpose of preventing, evaluating, diagnosing or treating an *illness* or *bodily injury*, or its symptoms.  Such health care service must be:
>
> • In accordance with nationally recognized standards of medical practice;
> • Clinically appropriate in terms of type, frequency, extent, site and duration, and considered effective for the patient's *illness* or bodily *injury*;
> • Not primarily for the convenience of the patient, physician or other health care provider; and
> • Not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of the patient's *sickness* or *bodily injury*.
>
> For the purpose of *medically necessary*, generally accepted standards of medical practice means standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community, Physician Specialty Society recommendations, the view of physicians practicing in relevant clinical areas and any other relevant factors.

(Administrative Record at 877).  The plan uses a set of clinical standards—the "Mihalik criteria"—to assess medical necessity.  In Ariana M.'s case, eight of these criteria must be present "throughout the episode of care" to make the services medically necessary:

> PM.A.g.1. The services must be consistent with nationally accepted standards of medical practice.
>
> PM.A.g.2. The services must be individualized, specific, and consistent with the individual's signs, symptoms, history, and diagnosis.

PM.A.g.3. The services must be reasonably expected to help restore or maintain the individual's health, improve or prevent deterioration of the individual's behavioral disorder or condition, or delay progression in a clinically meaningful way of a behavioral health disorder or condition characterized by a progressively deteriorating course when that disorder or condition is the focus of treatment for this episode of care.

PM.A.g.4. The individual complies with the essential elements of treatment.

PM.A.g.5. The services are not primarily for the convenience of the individual, provider, or another party.

PM.A.g.6. Services are not being sought as a way to potentially avoid legal proceedings, incarceration, or other legal consequences.

PM.A.g.7. The services are not predominantly domiciliary or custodial.

PM.A.g.8. No exclusionary criteria of the health plan or benefit package are met.

(*Id.* at 1566).

The following set of criteria must be satisfied to initiate treatment:

PM.A.i.1. Based on a behavioral health history and mental status evaluation completed by a psychiatrist or by a behavioral health professional licensed, certified, or registered to practice independently and reviewed by a psychiatrist prior to initiation of treatment, the individual is diagnosed as having, or there is strong presumptive evidence that the individual has a diagnosis of, a mental disorder or condition according to the most recent version of the *Diagnostic and Statistical Manual of Mental Disorders* that requires, and is likely to respond to, professional therapeutic intervention.

PM.A.i.2. A concurrent medical assessment does not indicate that a non-behavioral medical condition is primarily responsible for the symptoms or behaviors necessitating treatment in this setting.

PM.A.i.3. The individual does not have adequate internal resources or an adequate external support system to maintain functioning without the support of an intensive multi-modal, multi-disciplinary treatment program that includes medical and/or nursing care.

PM.A.i.4. With treatment at this level, the individual is capable of controlling behaviors and/or seeking professional help when not in a structured treatment setting.

PM.A.i.5. If the services being proposed have been attempted previously without

3

significant therapeutic benefit, there is a clinically credible rationale for why those same services could be effective now.

PM.A.i.6. The place of service meets the Service Setting Criteria for Partial Hospital Treatment: Mental Health as described on page 29.

One of the following <u>Treatment Initiation Criteria</u> is also required.

PM.A.i.7. As a result of the mental disorder or condition, the individual is now a clear and present danger to self, a clear and present danger to others, or unable to provide for basic self-care needs resulting in impending, serious self-harm.

PM.A.i.8. As a result of the mental disorder or condition:

> PM.A.i.8.1. The individual demonstrates significant impairment in social, occupational, scholastic or role functioning that represents a deterioration in level of functioning.

AND

> PM.A.i.8.2. The individual has participated in and failed a substantial course of traditional or intensive outpatient treatment in the past three months.

OR

> PM.A.i.8.3. It is clinically probable that the individual will require initiation of a higher level of care if services are not provided at this level.

(*Id.* at 1566–67).

These criteria must be satisfied to continue treatment:

PM.A.c.1. The individual continues to meet the treatment initiation criteria each day that services are provided at this level.

PM.A.c.2. There is an individualized plan of active, professionally directed treatment that specifies the goals, interventions, time frames, and anticipated outcomes appropriate to:

> PM.A.c.2.1. Improve or prevent deterioration or delay progression in a clinically meaningful way of the symptoms of, or impairment in functioning resulting from, the mental disorder or condition that necessitated initiation of treatment.

AND

4

PM.A.c.2.2. Address a co-morbid substance use disorder or condition, if one exists.

(*Id.*).

Humana denied benefits for continued partial hospitalization treatment, after a medical review by Dr. Manjeshwar Prabhu, a board-certified psychiatrist and contract physician with Humana's behavioral-health vendor, LifeSynch.  Dr. Prabhu examined Ariana M.'s medical files and consulted with her therapist at Avalon Hills in a peer-to-peer review.  (*Id.* at 324–28).  Avalon Hills told Dr. Prabhu that Ariana M. was not "progressing in treatment; she appears to be at her baseline behaviors." (*Id.* at 326).  She was not "[suicidal], [homicidal], or psychotic," and she had "no complications with her eating disorder."  (*Id.*).  Dr. Prabhu concluded that Ariana M. did not qualify for continued treatment under the Mihalik criteria.  Dr. Prabhu cited criterion PM.A.c.1, which requires that the patient meet the "treatment initiation criteria" each day to continue receiving benefits.  Dr. Prabhu found that Ariana M. was not "in imminent danger to [herself] or others," as required by criterion PM.A.i.7.  Her clinical records did not show "medical instability" or "functional impairments," as required by PM.A.i.8.1.  And Ariana M. could be safely treated at a lower level of care, such as an intensive outpatient program.  Criterion PM.A.i.8.3 requires a "clinical[] probab[ility] that the individual will require initiation of a higher level of care if services are not provided at this level."  Dr. Prabhu reported that continuing the treatment after June 4, 2013, was not medically necessary.  Humana denied coverage for continued treatment and provided Ariana M. and Avalon Hills with a notice and explanation of the denial the same day.  (*Id.* at 329–48).

Avalon Hills appealed.  Ariana M.'s claim was reviewed by Dr. Neil Hartman, a board-certified psychiatrist with a third-party review company, Advanced Medical Reviews.  Dr. Hartman consulted with Ariana M's treating physician and reviewed the medical records, including Dr. Prabhu's benefits denial.  Relying on the Mihalik criteria, Dr. Hartman also concluded that Ariana

M. did "not meet medical necessity for partial hospital treatment," that she was "not a danger to [herself or others]," and that she was "medically stable and not aggressive." (*Id.* at 367).  Dr. Hartman reported his conclusion on June 10, 2013.  Humana sent a notice and explanation of the denial to Ariana M. and to Avalon Hills on June 12.  (*Id.* at 375–97).

Ariana M. remained at Avalon Hills until September 18, 2013.  (Docket Entry No. 1 at p. 5). She sues for the cost of her treatment from June 5 to September 18, 2013.

## II.    The Standard of Review

Congress enacted ERISA "'to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits.'"  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830 (2003) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989)).  ERISA applies to an employee benefit plan established or maintained by an employer engaged in commerce or in any industry or activity affecting commerce.  29 U.S.C. § 1003(a).  An administrator must act "in accordance with the documents and instruments governing the plan."  29 U.S.C. § 1104(a)(1)(D); *see Pegram v. Herdrich*, 530 U.S. 211, 223 (2000) (discussing the various documents that constitute an ERISA plan).  Section 502(a)(1)(B) of ERISA allows a participant in, or beneficiary of, a covered plan to seek judicial review of a denied claim "to recover benefits due to him under the terms of his plan."  29 U.S.C. § 1132(a)(1)(B).

### A.    Whether the Benefits Determination Involved the Plan Terms or Factual Findings

In an ERISA case, the plan administrator's benefit determinations can be divided into two categories: interpreting the plan terms and determining the facts underlying the benefit claim.  A court reviews a plan administrator's construction of plan terms *de novo* unless the plan contains an express grant of discretionary authority.  If so, those decisions are reviewed for abuse of discretion.

6

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (quoting *Bruch* 489 U.S. at 115).  The parties agree that *de novo* review is the correct standard here.  (Docket Entry No. 20).  Even under *de novo* review of plan-term construction, however, a plan administrator's factual findings are reviewed for abuse of discretion.  *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 213 (5th Cir. 1999).  Whether treatment is "medically necessary" is a factual finding.  *Id.* at 214.  The question is whether Humana abused its discretion by finding that Ariana M.'s continued partial hospitalization treatment after June 4, 2013 at Avalon Hills was not medically necessary.

A court applying the abuse of discretion standard analyzes "whether the plan administrator acted arbitrarily or capriciously."  *Id.* (quotation marks omitted).  An administrator's decision to deny benefits must "be based on evidence, even if disputable, that clearly supports the basis for its denial."  *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (en banc), *overruled on other grounds by Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).  A decision is not arbitrary and capricious if it is supported by substantial evidence.  *Meditrust*, 168 F.3d at 215.  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 511 (5th Cir. 2010) (quotation marks omitted).  A decision is arbitrary when it is made "without a rational connection between the known facts and the decision or between the found facts and the evidence."  *Meditrust*, 168 F.3d at 215  (quotation marks omitted).

"[R]eview of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end."  *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 247 (5th Cir. 2009) (quotation marks omitted).  If the plan administrator's decision is "supported by

7

substantial evidence and is not arbitrary or capricious, it must prevail." *Ellis v. Liberty Life Assur. Co.*, 394 F.3d 262, 273 (5th Cir. 2004).

      **B.**      **Whether There Was a Conflict of Interest**

      An ERISA plaintiff asserting a conflict of interest must come forward with evidence of the existence and extent of the conflict. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011).  The record shows the existence of a conflict here.  "[A] third-party insurer's dual role as a claims administrator and plan funder gives rise to a conflict of interest that is pertinent in reviewing claims decisions." *Glenn*, 554 U.S. at 119  (Roberts, C.J., concurring).  Humana is a third-party insurer that both administers and funds the plan.  There is a conflict of interest.  When a plan administrator has a conflict of interest, a court considers the conflict as a factor in abuse-of-discretion review. *Id.* at 115.  The issue is the extent of the conflict.

      The Supreme Court explained that conflict-of-interest evidence will "prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." *Id.* at 117.  "Circumstances suggesting a higher likelihood that a plan administrator's conflict of interest affected [its] decision [also] exist . . . where the circumstances surrounding the determination suggest procedural unreasonableness." *Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1027 (5th Cir. 2015).  By contrast, a conflict of interest "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Glenn*, 554 U.S. at 117.  "Quite simply, 'conflicts are but one factor among many that a reviewing judge must take into account.'"

*Holland*, 576 F.3d at 247–48 (quoting *Glenn*, 554 U.S. at 116).

Ariana M. argues that Humana failed to take steps to reduce potential bias, resulting in increased scrutiny of its benefits-denial decision. "Absent other evidence suggesting procedural unreasonableness or warranting treatment of the conflict as a more significant factor, the mere fact that [the administrator] did not utilize any such precautions is not sufficient to justify giving [the] conflict greater weight." *Hagen*, 808 F.3d at 1030. The record undercuts Ariana M.'s argument because Humana relied on a third-party vendor to review the benefits denial, which the case law recognizes as a step to reduce bias. *See Holland*, 576 F.3d at 249 ("[A]lthough the Plan Administrator ultimately decides whether or not to award a claim, it submits applicants' records to independent medical professionals . . . .").

Ariana M. argues that Humana's decision was procedurally unreasonable because it had a history of improperly denying her claims, because Dr. Hartman was unqualified, and because Dr. Prabhu's denial was provided to Dr. Hartman before he did his own review. "[A] reviewing court may give more weight to a conflict of interest[] where the circumstances surrounding the plan administrator's decision suggest procedural unreasonableness." *Truitt v. Unum Life Ins. Co.*, 729 F.3d 497, 509 (5th Cir. 2013) (quotation marks omitted). The question is "whether the method by which the plan administrator made the decision was unreasonable." *Id.* at 510 (alteration omitted) (quotation marks omitted).

Ariana M. points to record evidence that during her hospitalization at Avalon Hills, Humana denied her request for continued benefits on several occasions, but then reversed the decision and authorized benefits. (Docket Entry No. 44 at p. 8–11). She points to evidence showing that Humana changed its denials when peer-to-peer reviews between Humana and Avalon Hills doctors revealed that further treatment was medically necessary. This evidence does not show that "Humana

9

repeatedly denied [her] claims without reflection on the continued inaccuracy of its decisions." (*Id.* at 21). To the contrary, it shows that Humana carefully reviewed its benefits denials and reversed them when peer-to-peer reviews showed that the plan authorized the continued treatment. This evidence does not support an inference of procedural unreasonableness.

Ariana M. also argues that the conflict of interest made Dr. Hartman unqualified to review her entitlement to benefits. She has neither pointed to nor submitted evidence showing that Dr. Hartman had a conflict of interest or that his compensation depended on the number of appeals he denied. *See Holland*, 576 F.3d at 249; *see also Jurasin v. GHS Prop. & Cas. Ins. Co.*, 463 F. App'x 289, 292 (5th Cir. 2014) (per curiam) ("There needs to be, for example, evidence that [the medical reviewer] had some specific stake in the outcome of [the] case, such as paying the doctors more when claims were denied." (quotation marks omitted)). Nor has Ariana M. pointed to or submitted evidence showing that either Dr. Hartman specifically or Humana generally "had a history of biased claims administration based on well-documented pattern of erroneous and arbitrary benefit denials, bad faith contract misinterpretations, and other unscrupulous tactics." *Hagen*, 808 F.3d at 1029 (quotation marks omitted).[1] Ariana M. also argues that Dr. Hartman was not qualified because he is not an eating-disorder specialist, and that Humana was procedurally unreasonable in relying on him. The record does not show any deficiency in Dr. Hartman's ability to review Ariana M.'s files, consult with her healthcare providers, and reach a coverage conclusion. He identified the specific reasons for finding that continued partial hospitalization treatment was not medically necessary. And "[s]o long as the Plan Administrator's decision is rationally related to the evidence, [the Fifth

---

[1] Ariana M. submits deposition testimony Dr. Hartman gave in a previous action involving different parties to support her argument. This is not competent summary-judgment evidence because depositions taken in earlier actions may only be used "in a later action involving the same subject matter between the same parties." FED. R. CIV. P. 32(a)(8); *Powertrain Inc. v. Ma*, — F. App'x —, 2016 WL 43702, at *2 (5th Cir. Jan. 4, 2016) (per curiam).

Circuit does] not require the Plan Administrator to credit a particular area of expertise when deciding on an applicant's prognosis." *Holland*, 576 F.3d at 249.

Ariana M. finally contends that Humana was procedurally unreasonable when it provided Dr. Prabhu's decision to deny benefits to Dr. Hartman.  ERISA requires that the review on appeal "not afford deference to the initial adverse benefit determination." 29 C.F.R. § 2560.503–1(h)(3)(ii). Although Dr. Hartman had Dr. Prabhu's benefit determination, the record does not show that Dr. Hartman gave that determination deference.

Ariana M. cites *DeLisle v. Sun Life Assurance Co.*, 558 F.3d 440 (6th Cir. 2009), but that case provides no support.  *DeLisle* involved the denial of long-term disability benefits because the claimant was not "actively at work" when she became disabled.  The insurance company's attorney told several of the medical reviewers that the claimant was fired "for cause" because her employer had told the insurance company that she was fired "because she was not doing her job."  The record did not show whether that was related to her disability.  The court held that the attorney "gave the file reviewers incomplete and potentially prejudicial information, which should have been irrelevant to an impartial assessment of [the claimant's] ability to perform her job on a particular day." *Id.* at 445.  The court noted "an increased risk of bias in the medical file review process when a conflicted plan administrator gives information to regular independent contractor-consultants that portrays the claimant in a negative light." *Id.*  The present record does not involve similar facts.  Instead, the record shows that Dr. Hartman reviewed Ariana M.'s file and did a peer-to-peer review with her treating physician at Avalon Hills.  There is no evidence supporting an inference that Dr. Prabhu's assessment gave Dr. Hartman "incomplete and potentially prejudicial information," or that Dr. Hartman improperly relied on Dr. Prabhu's report.

Ariana M. has not pointed to or submitted evidence of a history of biased claims

11

administration or procedural unreasonableness.  There is a conflict of interest, but the record shows that it is "not a significant factor in this case."  *See Holland*, 576 F.3d at 249.

## III.    Applying the Standard of Review

The record shows that Humana did not abuse its discretion in finding that Ariana M.'s continued treatment at Avalon Hills was not medically necessary after June 4, 2013.  Dr. Prabhu and Dr. Hartman—board-certified psychiatrists—both did peer-to-peer reviews with Ariana M.'s health-care professionals and reviewed her medical files to apply the plan's terms.  They set out their decisions in written reports that cited the Mihalik criteria and explained why Ariana M. failed to meet several prerequisites for continued treatment under the plan.

Ariana M. argues that the Mihalik criteria are unreasonable and should not have been used as a nationally recognized standard of medical practice.  Ariana M. argues that Humana should have used the American Psychiatric Association's criteria for treating patients with depression.  She argues that the Mihalik criteria "are not a reliable basis for establishing medically necessary treatment under the policy" because they are published by a health-care consulting company that sells and licenses the criteria to insurers and because insurers can request changes to the criteria. (Docket Entry No. 44 at p. 20).  This evidence does not show that the Mihalik criteria fail to represent nationally recognized medical standards or are otherwise inaccurate.  And Ariana M. cites no case law to support this argument. The record shows that these criteria were developed by "physicians practicing in relevant clinical areas."  (Administrative Record at 1503).   The plan provides that

> [f]or the purpose of medically necessary, generally accepted standards of medical practice means standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community, Physician Specialty Society recommendations, the view of physicians practicing in relevant clinical areas and any other relevant factors.

12

Ariana M. highlights a factual error in Dr. Hartman's report. It stated that Ariana M. had not received inpatient care earlier, but she received inpatient psychiatric treatment in 2011. (Administrative Record at 132). Although this was an error, Ariana M. has not explained how it relates to, or undermines, the conclusion that her continued treatment at Avalon Hills in 2013 was not medically necessary. The error is not a basis for finding an abuse of discretion.

Ariana M. also argues that a procedural irregularity in the benefits denial supports finding that Humana abused its discretion. ERISA regulations provide that "[i]f a group health plan has approved an ongoing course of treatment to be provided over a period of time or number of treatments," then

> [a]ny reduction or termination by the plan of such course of treatment (other than by plan amendment or termination) before the end of such period of time or number of treatments shall constitute an adverse benefit determination. The plan administrator shall notify the claimant, in accordance with paragraph (g) of this section, of the adverse benefit determination at a time sufficiently in advance of the reduction or termination to allow the claimant to appeal and obtain a determination on review of that adverse benefit determination before the benefit is reduced or terminated.

29 C.F.R. § 2560.503–1(f)(2)(ii)(A). Ariana M. argues that Humana failed to comply with this provision because it denied benefits on June 5, 2013 and did not continue to provide them until she received notice of the appeal denial on June 12.

The record shows that Humana had preapproved an "ongoing course" of partial hospitalization treatment from April 15 through June 4. (Administrative Record at 330). It denied the June 5 request for preauthorization for continued partial hospitalization treatment. Humana did not "reduce" or "terminate" benefits "before the end of such period of time," that is, before June 4, and no "number of treatments" applied. Humana did not violate this ERISA procedural regulation,

and there is no other basis proffered to find the date of the benefits denial arbitrary or capricious.[2]

## IV.    Conclusion

Humana's motion for summary judgment is granted, (Docket Entry No. 39), and its motion to strike is dismissed as moot, (Docket Entry No. 47).  To the extent that Ariana M. cross-moved for summary judgment, (Docket Entry No. 44), her motion is denied.  Final judgment is separately entered.

SIGNED on February 19, 2016, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

[2]  Humana also moved to strike documents Ariana M. attached to her summary-judgment response because they were outside the administrative record.  (Docket Entry No. 47).  Review is generally limited to the evidence before the plan administrator and contained in the administrative record, but a claimant may submit extra-record evidence to "question the completeness of the administrative record," challenge "whether the plan administrator complied with ERISA's procedural regulations," and demonstrate "the existence and extent of a conflict of interest created by a plan administrator's dual role in making benefits determinations and funding the plan."  *Crosby*, 647 F.3d at 263.  Humana argues that the documents Ariana M. submitted are outside the exceptions to the rule limiting review to the administrative record.  Humana also argues that some of the documents are hearsay or not authenticated.  Dr. Hartman's deposition testimony is not competent summary-judgment evidence.  *See supra* note 1.  Even with the other record evidence Ariana M. has submitted, summary judgment on her ERISA claim is warranted.  The motion is dismissed as moot.